## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RSUI INDEMNITY COMPANY       )
                                         )
       Plaintiff,            )
                                         )
          v.               )     Case No.
                                         )
AKSHAY M. DESAI, SANDIP I. PATEL )
SEEMA DESAI, JEFF LUDY,        )
DEEPAK DESAI, STEVEN J. SCHAEFER, )
JAYENDRA CHOKSI, THE FLORIDA  )
DEPARTMENT OF FINANCIAL SERVICES )
as RECEIVER for Universal Health Care  )
Insurance Company,  and UNIVERSAL HEALTH )
CARE GROUP, INC.              )
                                         )
       Defendants.         )

## RSUI INDEMNITY COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

RSUI Indemnity Company ("RSUI"), by and through its attorneys, and for its Complaint

for Declaratory Judgment pursuant to 28 U.S.C. § 2201-2202 against Defendants Akshay M.

Desai ("Dr. Desai"), Sandip I. Patel ("Patel"), Seema Desai ("S. Desai"), Jeff Ludy ("Ludy")

Deepak Desai ("D. Desai") Steven Schaefer ("Schaefer"), Jayendra Choksi ("Choksi"), the

Florida Department of Financial Services ("DFS") as receiver for Universal Health Care

Insurance Company ("UHCIC"), and Universal Health Care Group, Inc. ("Universal"), states as

follows:

## THE PARTIES

1.     Plaintiff RSUI is an insurance company that is organized and exists pursuant to

the laws of New Hampshire, with its principal place of business in the state of Georgia.

2.     Defendant Dr. Desai is a citizen of the state of Florida, and a former officer and

former member of the board of directors of UHCIC.

3.     Defendant Patel is a citizen of the state of Florida, and a former officer and former member of the board of directors of UHCIC.

4.     Defendant S. Desai is a citizen of the state of Florida, and a former officer and former member of the board of directors of UHCIC.

5.     Defendant Ludy is a citizen of the state of Florida and a former officer of UHCIC.

6.     Defendant D. Desai is a citizen of the state of Florida, and a former officer and former member of the board of directors of UHCIC.

7.     Defendant Schaefer is a citizen of the state of Florida and a former officer of UHCIC.

8.     Defendant Choksi is a citizen of the state of Florida and a former member of the board of directors of UHCIC.

9.     Defendant DFS is a citizen of the state of Florida and the court-appointed receiver for UHCIC.

10.     At all times material to this action, Defendant Universal was, and still is, a company organized and existing under the laws of the State of Florida, with its principal place of business in Pinellas County, Florida.

## JURISDICTION AND VENUE

11.     This Complaint is brought pursuant to 28 U.S.C. § 2201-2202 and seeks a declaratory judgment as to the rights and duties of RSUI regarding the "Criminal Investigation," "Clawback Letters," and "Receiver's Letters" described below under a Directors and Officers Liability Policy RSUI issued to Universal Health Care Group, Inc. ("Universal"), UHCIC's parent company.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

14.     As a result of a dispute with Defendants regarding the existence of coverage for the Criminal Investigation, Clawback Letters and Receiver's Letters, there is an actual case or controversy between the parties.

15.     The DFS has an interest in the resolution of this dispute because it has demanded to be paid the remaining limits of the relevant RSUI insurance policy to settle its claims in the Receiver's Letters.

## BACKGROUND

16.     Universal is a St. Petersburg, Florida health maintenance company that provides managed care services for government sponsored healthcare programs, focusing on Medicare and Medicaid.

17.     Specifically, Universal is a holding company for certain operating subsidiaries, including four subsidiaries operating as insurance companies: UHCIC, Universal Health Care, Inc. ("UHC"), Universal HMO of Texas, Inc. ("UTX"), and Universal Healthcare of Nevada, Inc. ("UHN").

18.     Universal suffered a $29 million net loss for the year ending December 31, 2011.

19.     On November 1, 2012, RSUI issued a Directors and Officers Liability Policy to Universal with a $5,000,000 aggregate limit of liability, bearing policy no. NHP648986 and effective November 1, 2012 to November 1, 2013 (the "Policy").

20.     RSUI issued the Policy in reliance on an application for insurance which showed

that Universal's financial condition had improved in 2012.

21.    In reality and unbeknownst to RSUI, Universal's financial condition had not improved in 2012.  Rather, it had gotten much worse.

22.    By the time RSUI issued the Policy, Universal was in free fall.

23.    On November 15, 2012, Georgia insurance regulators, citing concerns about UHCIC's finances, entered into a consent order with UHCIC barring it from selling any new policies in Georgia.

24.    On December 18, 2012, Ohio insurance regulators entered into a similar consent order with UHCIC.

25.    On January 17, 2013, UHCIC and UHC stopped selling policies altogether.

26.    On February 1, 2013, BankUnited, Inc., Universal's primary lender, notified Universal of a proposed foreclosure of Universal's equity interests in UHCIC, UHC, UTX, and UHN due to an uncured default under Universal's credit facility.  The foreclosure was scheduled for February 19, 2013.

27.    On February 4 and 5, 2013, the Florida Office of Insurance Regulation and the DFS commenced receivership proceedings against UHCIC and UHC, respectively, in the Circuit Court of the Second Judicial Circuit of Florida, Leon County.

28.    On February 6, 2013, Universal filed for Chapter 11 bankruptcy protection in a case captioned *In re: Universal Health Care Group, Inc.*, No. 13-bk-01520-KRM (M.D. Fla.).

29.    On March 21, 2013, the Circuit Court of the Second Judicial Circuit of Florida, Leon County ordered UHCIC and UHC into receivership and appointed the DFS as receiver.

30.    On March 27, 2013, the Department of Health and Human Services issued Grand Jury subpoenas to UHCIC, UHC, UTX and UHN seeking to compel testimony and the

production of various documents.

31.     On March 28, 2013, agents of the Federal Bureau of Investigation and the Human Services Office of the Inspector General raided Universal's headquarters, seizing documents and computers, sending employees home and effectively closing Universal's doors for good.

32.     In April 2013, the insureds reported the "Criminal Investigation," "Clawback Letters" and "Receiver's Letters" to RSUI for coverage.

## THE CRIMINAL INVESTIGATION

33.     On April 24 and 26, 2013, Ludy, D. Desai and Patel, through counsel, issued a joint letter to RSUI reporting that a criminal investigation into Universal's business affairs had commenced (the "Criminal Investigation") and demanding that RSUI provide coverage for the fees of criminal defense attorneys each had hired in connection with the Criminal Investigation. True and accurate copies of these letters are attached to this Complaint as Group Exhibit A.

34.     On April 25 and 29, 2013, Patel's criminal counsel sent similar letters to RSUI. These letters provided additional details about the nature and scope of the Criminal Investigation, including that "[o]n or about March 28, 2013 a number of federal agents executed a federal search warrant at the headquarters of Universal," that "[n]ews accounts of the raid reported that at least some of the agents were from the Federal Bureau of Investigation (FBI) and the Office of the Inspector General (OGI), U.S. Department of Health and Human Services," and that "the investigation is being directed by the Office of the United States Attorney, Middle District of Florida." True and accurate copies of these letters are attached to this Complaint as Group Exhibit B.

35.     RSUI denied coverage for the Criminal Investigation under the Policy.

## THE CLAWBACK LETTERS

36.     On April 4, 2013, the DFS demanded that Dr. Desai, Ludy, D. Desai and Patel

return "bonus" and "other compensation" each had allegedly received from UHCIC and UHC in

the twelve months preceding DFS's appointment as receiver (the "Clawback Letters").  Copies

of the Clawback Letters are attached to this Complaint as Group Exhibit C.

37.     According to the Clawback Letters, Dr. Desai, Ludy, D. Desai and Patel received

nearly $4.5 million in bonus and other compensation "at a time when UHCIC and UHC were

clearly insolvent or were experiencing impairments of capital or surplus" and when the

"impairment or insolvent financial condition of UHCIC and UHC was or should have been

especially obvious to [Dr. Desai, Ludy, D. Desai and Patel] as [officers] of the companies."

(Group Ex. C at pp. 4, 8, 12 and 16).

38.     The Clawback Letters claim such bonus and other compensation constitutes

voidable transfers which the DFS, as receiver, is entitled to recover pursuant to section 631.261,

Florida Statutes. (Id.)

39.     Dr. Desai, Ludy, D. Desai and Patel tendered the Clawback Letters to RSUI for

coverage under the Policy.

40.     RSUI agreed to defend Dr. Desai, Ludy, D. Desai and Patel, under a complete

reservation of rights, including the right to deny coverage for material misrepresentations made

in the application for insurance.

41.     RSUI denied any obligation to indemnify Dr. Desai, Ludy, D. Desai or Patel.

## THE RECEIVER'S LETTERS

42.     The DFS also issued a series of demand letters directly to RSUI (the "Receiver's

Letters" and, together with the Clawback Letters, the "Underlying Claims").  True and accurate

copies of the Receiver's Letters are attached to this Complaint as Group Exhibit D.

43.     The Receiver's Letters allege Dr. Desai, Patel, Ludy, D. Desai, Schaefer and

Choksi (as officers or directors of UHCIC) retroactively reduced a management fee paid by

UHCIC to American Managed Care, LLC ("AMC"), another Universal subsidiary. (Group Ex. D

at p. 2).

44.     According to the Receiver's Letters, this retroactive fee reduction created a

receivable on UHCIC's books that was uncollectible when recorded and remains so.  Further,

this sham receivable had the intended effect of masking UCHIC's insolvency. (Id.)

45.     The Receiver's Letters allege $16 million in damages (the value of the receivable)

and make a settlement demand for the Policy's full $5,000,000 limit of liability. (Id.)

## THE RSUI INSURANCE POLICY

46.     RSUI issued the Policy to Universal effective November 1, 2012.  A true and

accurate copy of the Policy is attached to this Complaint as Exhibit E.

47.     Section I. Insuring Agreements, A. of the Policy provides that:

> In consideration of the payment of premium and in reliance upon all
> statements made to the Insurer in the Application, and subject to the terms,
> conditions, definitions, exclusions and limitations hereinafter provided, the
> Insurer agrees … [w]ith the Insured Person that if a Claim for a Wrongful
> Act is first made against any Insured Person during the Policy Period and
> reported in accordance with SECTION V. – CONDITIONS, C., Notice of
> Claim or Circumstance of this policy, the Insurer will pay on behalf of
> such Insured Person all Loss such Insured Person is legally obligated to
> pay, except and to the extent that the Insured Organization is required or
> permitted to indemnify such Insured Persons.

48.     The following defined terms of the Policy are pertinent to coverage:

> **A.**     **Application** means the application attached to and forming a part
> of this policy, or any prior policy, including any materials
> submitted or requested in connection with such application, all of
> which are deemed a part of this policy.

**B.**     **Claim**, either in the singular or plural, means

1. A written demand for monetary or non-monetary relief;
2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
   a. Receipt or service of a complaint or similar proceeding;
   b. Return of an indictment (in case of a criminal proceeding; or
   c. Receipt of a notice of charges;
3. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

*     *     *

**G.**     **Insured** means any **Insured Organization** and/or any **Insured Person**.

*     *     *

**I.**     **Insured Person** means … [a]ny past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**.

*     *     *

**K.**     **Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post- judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include: … 9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

*     *     *

**N.**     **Wrongful Act** means any actual of alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual of alleged **Employment Practices Wrongful Act** by … [a]n **Insured Person** acting in his or her capacity as such and on behalf of the Insured or any matter claimed against them solely by reason of their status as an **Insured Person**;

*     *     *

49.     The following Policy condition is pertinent to coverage:

**K.     Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; and are material to the acceptance of the risk assumed by the **Insured** under this policy. This policy is issued in reliance upon the truth of such representations. No knowledge of information possessed by any Insured will be imputed to any other **Insured**. If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy shall not afford coverage to any **Insured** who knew of such untruth.

## THE APPLICATION

50.     Upon information and belief, each of the Defendants except the DFS is an Insured under the Policy.

51.     To obtain the Policy, the Insureds provided RSUI with a Directors and Officers Liability – Private Company Renewal Application (the "Application"). A true and accurate copy of the Application is attached to this Complaint as Exhibit F.

52.     The Application requires the Insureds to answer various underwriting questions.

53.     The Application also requires the Insureds to provide copies of each of the following documents: "(a) Complete Copy of the Latest Annual Report. If Audited Financials, Please Include Auditors Notes. (b) Copy of the Latest Interim Financial Statement. (c) Copy of the Indemnification Provision of the Organization. (d) Current List of Directors and Officers. (e) EEO-1 Report (If Required by Federal Law). (f) Shareholder (Common Stock and Preferred Stock) Listing with Ownership Percentages." (Ex. F. at p.3).

54.     The Insureds answered the underwriting questions in the Application and provided RSUI copies of all requested documents, except for a copy of Universal's

Indemnification Provision.  "No Change" is written on the Application where a copy of

Universal's Indemnification Provision is requested. (Id.).

55.     The  Application provides that:

> The undersigned authorized Officer of the Organization, on behalf of the
> Directors and Officers of the Organization, declares that to the best of
> his/her knowledge and belief the statements set forth herein are true.  The
> undersigned agrees that this renewal application is a supplement to the
> application completed for issuance of the first policy, and that application
> together with this renewal application and the information, particulars,
> documents, representations and statements furnished pursuant thereto shall
> be the basis of the contract should a policy be issued and such applications
> will be attached to and become part of the policy.  The Insurer is
> authorized to make any investigation and inquiry it deems necessary in
> connection with this application.

(Ex. F. at p.2).

56.     The  Application also provides that:

> The undersigned authorized Officer agrees that if the information supplied
> in this application changes between the date of this application and the
> effective date of the insurance, he/she (undersigned) will immediately
> notify the Insurer of such changes, and the Insurer may withdraw or
> modify any outstanding quotations and/or authorization or agreement to
> bind the insurance.

(Ex. F. at p.3).

57.     The Application is signed by Dr. Desai as "President and Chief Executive

Officer" of Universal and was provided to RSUI on or about September 28, 2012.

## MISREPRESENTATIONS IN THE APPLICATION

58.     The Application contains at least five material misrepresentations.

59.     Collectively, these misrepresentations gave RSUI the false impression that

Universal's finances had improved in 2012.

60.     Universal's finances did not improve in 2012.

61.     By the time RSUI issued the Policy, Universal was on the brink of insolvency or

already insolvent.

62.     Had RSUI known the truth, it would have issued the Policy under substantially different terms such that the Policy would not cover the Clawback Letters, Receiver's Letters or any criminal charges stemming from the Criminal Investigation.

**First Misrepresentation**

63.     The first misrepresentation involves Universal's interim financials for the six months ending June 30, 2012 (the "Interim Financials").

64.     The Insureds provided the Interim Financials to RSUI as part of the Application.

65.     According to the Interim Financials, UHCIC earned a $16.7 million pre-tax profit for the six months ending June 30, 2012 and UHC earned a $26.4 million pre-tax profit for the same period. (Ex. F at 54-56).

66.     According to the Interim Financials, these profits added nearly $27 million of additional capital and surplus into UHCIC and UHC on an after-tax basis. (Id.)

67.     Unfortunately, RSUI now knows the Interim Financials were false.

68.     The Interim Financials bear no resemblance to the actual financials the Insureds reported to the National Association of Insurance Commissioners ("NAIC") for the same six month period (the "Statutory Financials").

69.     The Insureds did not provide the Statutory Financials to RSUI.  Copies of the relevant portions of the Statutory Financials are attached to this Complaint as Group Exhibit G.[1]

70.     UHCIC and UHC first filed their Statutory Financials with the NAIC in August 2012.  UHCIC reported a $8.6 million pre-tax profit and UHC reported a $18.5 million pre-tax profit, for a combined pre-tax profit of $27.1 million. (Ex. G at pp. 4, 17).

71.     In September 2012, UHC restated its Statutory Financials to increase its expense

---

[1] RSUI will gladly provide complete copies of the Statutory Financials at the request of the Court or the Defendants.

for hospital/medical benefits from $219 million to $255 million. (Ex. G at pp. 20-26). UHC's $18.5 million pre-tax "profit" was replaced with a $16.1 million *loss* and UHC's capital and surplus fell to $17.7 million. (Id.)

72.     In October 2012, UHCIC also restated its Statutory Financials to increase its expense for hospital/medical benefits, from $230 million to $264 million. (Ex. G at pp. 7-13). UHCIC's $8.6 million pre-tax "profit" was replaced with a $22.1 million *loss* and UHCIC's capital and surplus fell to $20.8 million. (Id.).

73.     Thus, when RSUI issued the Policy to Universal, it believed that UHC and UHCIC had earned a combined pre-tax profit of $43.1 million for the first six months of 2012 and that each company's capital and surplus had improved accordingly. In fact, UHC and UHCIC had actually *lost* a combined $38.2 million during the first six months of 2012 (a difference of $81 million) and each company's capital and surplus had deteriorated accordingly.

**Second Misrepresentation**

74.     The second misrepresentation is the Insured's failure to disclose that Universal had defaulted on its $60 million credit facility.

75.     Question 6(a) of Section I of the Application asks the Insureds to "List details of all securities offerings (including debt offerings) made in the last twelve (12) months including date of offering and amount of capital raised."

76.     In response, the Insureds stated that "[o]n April 6, 2012, the Company completed a $60 Million senior revolving line of credit with BankUnited as the lead bank. The facility was used to pay off the remaining balance of the $40 Million Wells Fargo loan executed in 2011 as well as provide additional access to working capital."

77.     The Insureds omitted the fact that Universal had defaulted on this credit facility.

78.     The Insureds also failed to update the Application (as required by its terms) when, on October 29, 2012, BankUnited sent Universal a formal written notice of default. A copy of this Notice of Default is attached to this Complaint as Exhibit H.

79.     In the Notice of Default, BankUnited claimed that Universal had misrepresented its 2011 financials in applying for the credit facility. (Ex. H. at 1.)

80.     In applying for the credit facility, Universal provided BankUnited with unaudited financials for the year ending December 31, 2011 that showed a pre-tax profit of $16 million and net income of $10.7 million. (Id.)

81.     When Universal issued its audited financials for 2011 on July 31, 2012 (the "Audited Financials"), BankUnited learned that Universal had actually suffered a $29 million net *loss* in 2011. (Id.)

82.     This was a significant default. Not only was the credit facility a vital source of working capital, on April 26, 2012, Universal informed Florida insurance regulators that AMC would use the BankUnited credit facility to pay down a multi-million receivable AMC owed to UHCIC, the very receivable complained of in the Receiver's Letters. Moreover, the default required Universal to deliver to BankUnited an $11.5 million tax refund it received on October 26, 2012. Universal, however, transferred the refund to UHCIC on November 2, 2012.

83.     Thus, when RSUI issued the Policy to Universal, it believed the $60 million BankUnited credit facility would provide Universal (a thinly capitalized company) with "access to working capital." In fact, Universal had defaulted on the credit facility, had received a formal notice of default from BankUnited and would further violate the credit agreement by improperly transferring $11 million of collateral to UHCIC.

**Third Misrepresentation**

84.     The third misrepresentation is the Insureds' failure to disclose that UHCIC had material weaknesses in its accounting controls and that UHC had received a qualified opinion from its auditor for its 2011 financials.

85.     On June 1, 2012, Ernst & Young (Universal's auditor) wrote a letter to UHCIC's board of directors citing several material weaknesses in UHCIC's accounting controls.  A copy of this letter is attached to this Complaint as Exhibit I.

86.     Upon information and belief, at least two of these material weaknesses relate to accounting entries in UHCIC's Statutory Financials that were restated in October 2012.

87.     On April 12, 2012, Ernst & Young included within UHC's 2011 audited financial statements a warning that UHC's liability for medical and pharmacy claims payable at December 31, 2011 was materially understated.  A copy of UHC's 2011 audited financial statements is attached to this Complaint as Exhibit J.

88.     Neither the June 1, 2012 letter nor the April 12, 2012 warning were provided to RSUI.

89.     Thus, when RSUI issued the Policy to Universal, it was unaware that UHCIC and UHC had significant accounting issues.

**Fourth Misrepresentation**

90.     The fourth misrepresentation is the Insureds' failure to disclose regulatory actions taken against UHCIC because of its deteriorating finances.

91.     The Audited Financials included in the Application reported that, as of December 11, 2011, each of Universal's operating subsidiaries (including UHCIC) was in compliance with statutory minimum net worth requirements. (Ex. F. at p. 51).

92.     By October 2012, that was no longer true.

93.     In October 2012, UHCIC reported to Georgia state insurance regulators that its capital and surplus had fallen to $20.8 million, below the amount an August 28, 2006 consent order required UHCIC to maintain.

94.     The Insureds knew Georgia insurance regulators would take action against UHCIC because of this deficit.

95.     The Insureds also knew regulatory action would negatively impact UHCIC; UHCIC received nearly 20% of its revenues from Georgia customers.

96.     On November 14, 2012, Georgia regulators entered into a new consent order with UHCIC. A copy of this consent order is attached to this Complaint as Exhibit K.

97.     This consent order required UHCIC to immediately stop selling new policies in Georgia.

98.     On information and belief, Georgia regulators discussed the possibility of regulatory action (including the possibility of a new consent order) with the Insureds well before RSUI issued the Policy to Universal on November 1, 2012.

99.     Thus, when RSUI issued the Policy to Universal, it believed UHCIC was "in compliance with statutory minimum net worth requirements." In fact, UHCIC was financially impaired, facing serious regulatory actions and on the verge of receivership.

**Fifth Misrepresentation**

100.    The fifth misrepresentation is the Insureds' failure to disclose that Universal was actively seeking new investors and/or trying to sell the company.

101.    Question 6(b) of Section I of the Application asks "Does the Organization contemplate any security offerings (including debt offerings) in the next twelve (12) months?

Yes/No. If Yes, please give details." (Ex. F. at p. 2).

102.    In response, the Insureds checked "No".

103.    On information and belief, this response was untrue when made or ceased to be true before RSUI issued the Policy.

104.    For example, on January 23, 2013, MBF Healthcare Partners LP, a south-Florida based private equity firm, announced that it had entered into a letter of intent to inject capital into Universal.

105.    On January 30, 2013, MBF Healthcare Partners announced it no longer planned to invest in Universal.

106.    In addition, on February 1, 2013, Dr. Desai wrote to a Florida insurance regulator to provide "as an addendum to the company's December 2012 financial package, a brief write-up of our plan to bridge the capital hole." A copy of this letter is attached to this Complaint as Exhibit L.

107.    In this addendum, Dr. Desai enclosed a letter agreement with America's 1st Choice Holdings of Florida, LLC pursuant to which America's 1st Choice would "infuse $30 million dollars of capital into [Universal] once they acquire the company." (Ex. L at p. 1).

108.    The transaction with America's 1st Choice never closed either.

109.    It is extremely unlikely the Insureds first discovered a "capital hole", formulated plans to "bridge" that "capital hole", hired advisors to assist in this process, made pitches to potential investors, found two willing investors, negotiated with these investors and entered into binding agreements with these investors, all within 60 days, i.e., between the time the Policy incepted (November 1, 2012) and the announcement of the transaction with America's 1st Choice.

110.     Upon information and belief, the Insureds completed the Application knowing they had a "capital hole" to "bridge" and while planning to "bridge" this "capital hole" with some combination of securities offerings and asset sales.

111.     Thus, when RSUI issued the Policy to Universal, it believed the Insureds had no plans to issue new securities.  Upon information and belief, the Insureds were actively planning to "bridge" a "capital hole" with some combination of securities offerings and asset sales.

**Summary**

112.     The Application provided to RSUI misrepresented that Universal: earned a significant profit for the first six months of 2012 (in fact, Universal suffered a significant loss), was not in default on its credit facility (in fact, it was), had proper accounting controls in place (in fact, several material weaknesses existed), was in compliance with minimum statutory net worth covenants (in fact, UHCIC was not in compliance and was negotiating consent orders with state insurance regulators) and had no plans to issue new securities (upon information and belief, the Insureds were actively seeking investors to "bridge" a "capital hole").

113.     Had RSUI known the truth, it would have issued the Policy under substantially different terms such that the Policy would not cover the Clawback Letters, Receiver's Letters or any criminal charges stemming from the Criminal Investigation.

## COUNT I

## NO COVERAGE UNDER THE POLICY
### (Against All Defendants)

114.     RSUI hereby repeats and realleges the allegations set forth in paragraphs 1 through 112.

115.     The Application the Insureds provided to RSUI contained information, documents, representations and statements that were untrue. (See allegations in ¶¶ 57 to 112).

116.    Defendants Dr. Desai, Patel, Ludy, D. Desai, Schaefer and Choksi knew of these untruths.

117.    The Policy does not afford coverage to any Insured who knew of untruths in the Application.

118.    Therefore, the Policy does not afford coverage to Defendants Dr. Desai, Patel, Ludy, D. Desai, Schaefer and Choksi.

119.    Pursuant to 28 U.S.C. §§ 2201-2202, RSUI seeks a judicial declaration that, under the terms of the Policy, there is no coverage for Defendants Dr. Desai, Patel, Ludy, D. Desai, Schaefer and Choksi.

**COUNT II**

**NO DUTY TO DEFEND THE CRIMINAL INVESTIGATION**
**(Against Defendants Dr. Desai, Patel, Ludy, D. Desai, and Universal)**

120.    In the alternative and if the relief sought in Count I is not granted, RSUI hereby repeats and realleges the allegations set forth in paragraphs 1 through 112.

121.    Subject to its terms and conditions, the Policy provides coverage for Loss that an Insured Person becomes legally obligated to pay on account of a Claim for a Wrongful Act.

122.    With respect to criminal proceedings, the term Claim is limited to the return of an indictment.

123.    Should any Insured Person be indicted after the Criminal Investigation is complete, such indictment would be a Claim.  However, the investigation leading up to such an indictment is not a Claim.

124.    Pursuant to 28 U.S.C. §§ 2201-2202, RSUI seeks a judicial declaration that under the terms of the Prior Policy, there is no duty to defend Defendants Dr. Desai, Patel, Ludy, and D. Desai with respect to the Criminal Investigation.

## COUNT III

### NO DUTY TO INDEMNIFY FOR THE CLAWBACK LETTERS
### (Against Defendants Dr. Desai, Patel, Ludy, D. Desai, the DFS, and Universal)

125.    In the alternative and if the relief sought in Count I is not granted, RSUI hereby repeats and realleges the allegations set forth in paragraphs 1 through 112.

126.    The Clawback Letters seek to avoid and recover bonus or other compensation received by Defendants Dr. Desai, Patel, Ludy and D. Desai.

127.    The return of bonus or other compensation, or any settlement amount representing, or substantially equivalent to such a return, does not constitute Loss, as such term is defined under the Policy.

128.    Pursuant to 28 U.S.C. §§ 2201-2202, RSUI seeks a judicial declaration that under the terms of the Policy, there is no duty to indemnify Defendants Dr. Desai, Ludy, Patel and D. Desai with respect to the Clawback Letters.

### PRAYER FOR RELIEF

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 28 USC § 2201-2202, RSUI respectfully requests that this Honorable Court:

(a)    Declare that there is no coverage under the Policy for Defendants Dr. Desai, Patel, Ludy, D. Desai, Schaefer  Choksi;

(b)    Declare that RSUI may immediately terminate its defense of defendants Dr. Desai, Ludy, Patel and D. Desai with respect to the Clawback Letters;

(c)    Declare that RSUI may recoup all defense costs expended in defending Dr. Desai, Ludy, Patel and D. Desai with respect to the Clawback Letters;

(d)    Declare that there is no duty defend Dr. Desai, Ludy, Patel or D. Desai with respect to the Criminal Investigation;

(e)     Declare that there is no duty indemnify Dr. Desai, Ludy, Patel or D. Desai with respect to the Clawback Letters;

(f)     Otherwise declare all of the rights and obligations of RSUI under the Policy with respect to the Criminal Investigation, Clawback Letters and Receiver's Letters; and

(g)     Award any and all other relief deemed equitable and just by the Court.


Respectfully submitted,

**PHELPS DUNBAR LLP**


JASON A. HERMAN, ESQ.; FBN: 0016086
hermanj@phelps.com
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602
Tel: (813) 472-7550 / Fax: (813) 472-7570


and


William P. Bila, Esq.
Ryan M. Henderson, Esq.
Kevin G. Mikulaninec, Esq.
WALKER WILCOX MATOUSEK LLP
One North Franklin
Suite 3200
Chicago, IL  60606-3610
Telephone: 312.244.6700
Fax: 312.244.6800
E-mail: wbila@wwmlawyers.com
rhenderson@wwmlawyers.com
kmikulaninec@wwmlawyers.com
(Moving for Admission pro hac vice)


Attorneys for Plaintiff RSUI INDEMNITY
COMPANY