**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**RSUI INDEMNITY COMPANY,**

    Plaintiff,

v.                                           Case No.  8:13-cv-2629-T-30TGW

**AKSHAY M. DESAI, et al.**

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants/Counter-Plaintiffs Sandip I. Patel, Jeff Ludy, and Deepak Desai's ("Defendants'") Motion for Partial Summary Judgment on Count II of Plaintiff's Complaint and Defendants/Counter-Plaintiffs' Counterclaim (Dkts. 70, 74, 76), to which Plaintiff RSUI Indemnity Company ("RSUI") has responded in opposition (Dkt. 78); and RSUI's Motion for Summary on Count II of Its Complaint and on Defendants' Counterclaim (Dkt. 71), to which Defendants have responded in opposition (Dkt. 77).[1]  The Court, having reviewed the motions, responses, and record, and being otherwise advised of the premises, concludes that RSUI's motion should be granted and Defendants' motion denied.

---

[1] In order to expedite the resolution of the issues presented in Count II of the Complaint (Dkt. 1) and the Counterclaim (Dkt. 29), the parties were permitted to file preliminary cross-motions for partial summary judgment on these claims (Dkt. 62).  Defendants Akshay Desai and Seema Desai have joined in Defendants' motion and response (Dkts. 72, 79).

*Background*

Defendant Universal Health Care Group, Inc. ("Universal") provides health insurance and managed-care products and services through its wholly-owned subsidiaries, including Universal Health Care Insurance Company, Inc. ("UHCIC") and Universal Health Care, Inc. ("UHC"). Plaintiff RSUI issued a claims-made Directors and Officers Liability Policy ("the Policy") to Universal, effective November 1, 2012 to November 1, 2013, with an aggregate limit of $5,000,000. Patel, Ludy, and Desai ("Defendants") were directors or officers of Universal and/or UHCIC during the relevant period.

On February 6, 2013, Universal filed a voluntary petition for Chapter 11 bankruptcy. On March 21 and 27, 2013, a Florida state court ordered UHCIC and UHC into receivership and appointed the Florida Department of Financial Services as Receiver. On April 4, 2013, the Receiver served Defendants with "clawback letters," seeking return of "bonuses" and "other compensation" received by Defendants from UHCIC and/or UHC. RSUI is providing a defense to Defendants with respect to the clawback letters, under a reservation of rights.

In addition to the bankruptcy and receivership proceedings, Defendants maintain that they are the targets of an ongoing criminal investigation. On April 24, 2013, Defendants tendered the defense and indemnity of the criminal investigation to RSUI, as required under the Policy. RSUI refused to pay for the defense of the criminal investigation.

In support of their contention that there is an active criminal investigation, Defendants cite a search and seizure warrant, issued by a federal magistrate judge on March 27, 2013, which sought evidence of violations of 18 U.S.C. § 1347 (health care fraud), 18 U.S.C. § 287

(false, fictitious or fraudulent claims), 18 U.S.C. § 1516 (obstruction of federal audit), and 18 U.S.C. § 1344 (bank fraud), including patient records, personnel records, financial documents, and computer equipment and electronic data (Dkt. 70-1). On March 28, 2013, law enforcement executed the warrant at Universal's headquarters. Additionally, two former employees testified that they were interviewed by the FBI, and, in Universal's bankruptcy proceedings, the Trustee alleged possible criminal conduct by Universal's officers and directors. Finally, the parties agree that a grand jury proceeding commenced at some point, although no indictments have been returned.

On October 11, 2013, RSUI filed the instant action, seeking a declaratory judgment as to its duties under the Policy. In Count II of the Complaint, RSUI requests a declaration that it has no duty to provide a defense to Defendants with respect to the criminal investigation. Defendants filed an answer and counterclaim, alleging that RSUI does have a duty to defend the criminal investigation. As detailed below, the Court finds that the criminal investigation, including the warrant and grand jury proceeding, did not trigger a duty to defend, under the plain language of the Policy. Accordingly, RSUI's partial motion for summary judgment is granted, and Defendants' motion is denied.

### *Standard*

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *See id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *See id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *See Anderson*, 477 U.S. at 248–49.

*Discussion*

*1.     Applicable law*

In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies. *Am. Family Life Assur. Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). Florida courts will enforce an express choice-of-law provision in an insurance policy. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir.1995). Here, the Policy contains a "Governing Law Clause," which provides:

> This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization**,[2] or in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

(Dkt. 70-4 at 15). The "Insured Organization" is Universal, a Delaware corporation. As a result, Defendants maintain that Delaware law governs. By contrast, RSUI maintains that Florida law governs because UHCIC and UHC are each a "Subsidiary" incorporated in Florida.[3]

At this juncture, the Court does not resolve the choice-of-law issue, as the parties do not contend that the selection of the substantive law is determinative in this case. *See Fioretti*, 53 F.3d at 1234. Under Florida law, the interpretation of insurance contracts is governed by generally accepted rules of construction:

> Insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage. However, courts only look to the rules of construction when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. Courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties. Further, in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.

---

[2] Terms in bold print are expressly defined by the Policy.

[3] To the extent that the choice-of-law provision is not effective, and resort must be made to Florida choice-of-law principles, Florida applies the doctrine of *lex loci contractus*. Under that doctrine, the governing law is "the law of the state in which the contract is made, *i.e.*, where the last act necessary to complete the contract is done." *Fioretti*, 53 F.3d at 1235. RSUI asserts that this state is Florida, and Defendants have not disputed that assertion.

*Intervest Constr. of Jax, Inc. v. Gen. Fidelity Ins. Co.*, 133 So. 3d 494, 497-98 (Fla. 2014) (internal citations and quotation marks omitted). The interpretation of an insurance contract, including the determination and resolution of any ambiguity, is a question of law for the court. *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993).

Likewise, under Delaware law, the interpretation of insurance contracts is a question of law to be determined by the court. *See, e.g.*, *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001). The Court must consider all of the pertinent provisions as a whole, and not rely on any single passage in isolation. *Id*. at 287. Extrinsic evidence will not be used to interpret contract language when that language is "plain and clear on its face." *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997). "Contract language is not ambiguous simply because the parties disagree on its meaning. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id*. An ambiguous provision is construed strongly against the insurer, and in favor of the insured. *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

*2.    Policy language*

In the instant case, the Policy provides coverage "if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period**" (Dkt. 70-4 at 6). RSUI must defend any claim for which coverage applies (Dkt. 70-4 at 11). At this juncture, RSUI does not dispute Defendants' status as "Insured Persons" or that the relevant acts occurred during the "Policy Period." Rather, the instant motions turn on whether the criminal

investigation, including the warrant and grand jury proceeding, constitute "a Claim for a Wrongful Act."

A "Claim" is defined as:

1. A written demand for monetary or non-monetary relief;

2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

    a. Receipt or service of a complaint or similar pleading;

    b. Return of an indictment (in case of a criminal proceeding); or

    c. Receipt of a notice of charges;

3. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

(Dkt. 70-4 at 6-7).

Defendants maintain that the criminal investigation qualifies under the first prong of the definition because the search and seizure warrant was a "written demand for . . . non-monetary relief"—specifically, the production of documents and things.[4] Defendants further contend that the violations of federal law identified in the warrant constitute the requisite "Wrongful Act," which is defined, in relevant part, as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty" (Dkt. 70-4 at 9).

---

[4] Although Defendants also characterize the grand jury proceeding and the overall criminal investigation as a "Claim," they cite no facts indicating that either event has been associated with a "written demand," as required under the Policy.

RSUI argues that the Policy must be read as whole, and although a "criminal proceeding" is potentially covered under the second prong of the "Claim" definition, a criminal proceeding does not become a "Claim" unless and until an indictment is returned. With respect to the first prong of the definition—the provision relied on by Defendants—RSUI argues that: (1) the warrant was not a "demand," (2) the warrant did not request any "relief," and (3) even if a demand and request for relief existed, they were not "for" a wrongful act.

### 3. *Policy interpretation*

The Court finds that the warrant is not "a Claim for a Wrongful Act." Assuming, *arguendo*, that the warrant constitutes a "written demand," it was not a demand for "relief." Although the Policy does not define the term "relief," in the legal context, it is well-established that relief means "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court." *Black's Law Dictionary* 1404 (9th ed. 2004); *see also Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291-92 (Fla. 2007) (observing that courts may consult reference sources to determine the plain and accepted meaning of words); *see, e.g., Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 44 (Del. 1996) (consulting dictionary definition of policy term).

The Court notes that this interpretation of "relief"—which Defendants themselves adopt (Dkt. 77 at 5)—is consistent with the remainder of the applicable coverage provision. Specifically, any written demand for relief must be "*for* a Wrongful Act." In this context,

the word "for" means "[i]n response to; as requital of." *American Heritage Dictionary* 512 (New Coll. ed. 1978); *see also Webster's II New Riverside University Dictionary* 495 (1st ed. 1988) (stating that primary definition of "for" is "[u]sed to indicate the object, aim, or purpose of an act or activity"). Thus, under the plain meaning of the Policy, the written demand must seek redress in response to, or as requital of, a wrongful act. *See Fla. Dep't of Fin. Servs. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 4:11-cv-242, 2012 WL 760606, at *3 (N.D.Fla. Mar. 7, 2012) (noting that "claim" must be read in conjunction with "wrongful act"). Defendants do not advance any other reasonable interpretation of these terms.

In this case, the warrant was arguably a written demand for the production of documents and things. Critically, however, those documents and things were not demanded as redress in response to (or as requital of) a wrongful act. At best, the production of Universal's documents and things enabled law enforcement to investigate whether a wrongful act had occurred. *See Emp'rs Fire Ins. Co. v. Promedica Health Sys., Inc.*, 524 F. App'x 241, 252-53 (6th Cir. 2013) (analyzing similar provisions); *Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*, No. 06-cv-13105, 2008 WL 4613170, at *4 (S.D.N.Y. Aug. 18, 2008) (noting that plain meaning of "relief," in D&O policy, did not extend to search warrants); *see also Fin. Ind. Regulatory Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 832

(D. Md. 2013) (observing that "written demand for monetary or non-monetary relief" is not ambiguous).[5]

Moreover, a determination that the warrant is not a "Claim" under the first prong of the definition is consistent with the remainder of that term's definition. As detailed above, a "Claim" is also defined to include a "criminal . . . proceeding for monetary or non-monetary relief which is commenced by . . . [r]eturn of an indictment." Accordingly, the Policy does provide coverage for a criminal proceeding—when an indictment is returned.

Based on the foregoing, the Court finds that the relevant policy language is not ambiguous, and the criminal investigation, including the warrant and grand jury proceeding, is not "a Claim for a Wrongful Act." Because coverage is not triggered by the criminal investigation, RSUI does not have a duty to defend.

---

[5] The cases cited by Defendants are not binding on this Court, and the majority of these cases are readily distinguishable on their facts, including significant differences in the policy language at issue. *See, e.g., Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461, 463 (8th Cir. 1990) ("claim" was not defined in the policy); *Richardson Electronics, Ltd. v. Federal Ins. Co.*, 120 F. Supp. 2d 698, 700-01 (N.D. Ill. 2000) (same); *Dan Nelson Auto. Grp., Inc. v. Universal Underwriters Grp.*, No. Civ-05-4044, 2008 WL 170084, at *5 (D. S.D. Jan. 15, 2008) (same); *Joseph P. Bornstein, Ltd. v. National Union Fire Ins. Co. of Pittsburgh*, 828 F.2d 242, 244 (4th Cir. 1987) (policy covered a "proceeding" rather than a "demand"); *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 159 (2d Cir. 2011) (same); *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, Case No. 03-C-6067, 2004 WL 603482 at *3-4 (N.D. Ill. Mar 22, 2004) (policy did not require "relief" to be "for" any wrongful act). Two of the other cases cited relied on the foregoing, distinguishable case law, and the Court declines to adopt their reasoning. *See, e.g., Agilis Ben. Servs. LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 5:08-cv-213, 2010 WL 8573372, at *7 (E.D. Tex. Apr. 30, 2010) (finding persuasive *Minuteman* and citing *Bornstein* and *Polychron*); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2012EF63, 2013 WL 3357812 at *3 (N.Y. Sup. Ct. Mar 7, 2013) (citing *MBIA Inc.*).

### *4.   Relation to receivership proceedings*

In response in opposition to RSUI's motion, Defendants also argue that, because RSUI is providing a defense under a reservation of rights for the Receiver's clawback letters, RSUI should defend the criminal investigation because it is related to the receivership proceedings. In support of that argument, Defendants cite the following Policy language:

> All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 4. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the Policy Period.

(Dkt. 70-4 at 11).

The Court rejects Defendants' argument. Regardless of whether the criminal investigation and receivership proceedings are related, the criminal investigation is not a "Claim," for the reasons discussed above. And the foregoing provision, by its express terms, only applies to related "Claims." Because there is only one arguable "Claim" here—the clawback letters—this provision is not relevant to the instant motions.

It is therefore ORDERED AND ADJUDGED that:

1.   Defendants/Counter-Plaintiffs Sandip I. Patel, Jeff Ludy, and Deepak Desai's ("Defendants'") Motion for Partial Summary Judgment on Count II of Plaintiff's Complaint and Defendants'/Counter-Plaintiffs' Counterclaim (Dkts. 70) is denied.

2. Plaintiff RSUI Indemnity Company's Motion for Summary on Count II of Its Complaint and on Sandip I. Patel, Deepak Desai, and Jeff Ludy's Counterclaim (Dkt. 71) is granted. Count I and Count III of the Complaint remain at issue.

**DONE** and **ORDERED** in Tampa, Florida on September 2, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Parties/Counsel of Record

KM:sa